NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0623n.06

No. 15-2548

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: SETTLEMENT FACILITY DOW CORNING TRUST. | ) ) | **FILED** |
| _____ | ) | Nov 23, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| KOREAN CLAIMANTS, | ) | |
| | ) | |
|     Interested Parties-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DEBTOR'S REPRESENTATIVES, DOW CORNING CORPORATION, CLAIMANTS' ADVISORY COMMITTEE, | ) ) ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. In 1995, Dow Corning Corporation declared Chapter 11 bankruptcy while facing thousands of lawsuits related to silicone-gel breast implants. Dow Corning's Reorganization Plan established a settlement fund for claimants who agreed to settle their suits. A number of claimants from Korea now object to a consent order entered on December 3, 2015, which clarifies certain procedures for distributing part of the settlement fund. We affirm.

The bankruptcy court confirmed the Reorganization Plan in 1999. Pursuant to the Plan, Dow Corning and the Claimants' Advisory Committee executed a Distribution Agreement that details the procedure for distributing the settlement fund. That Agreement also created a Trust to administer and evaluate claims for recovery from the fund. The Distribution Agreement divided

the fund into sub-funds, including the Class 7 Fund, whose claimants received implants made by American manufacturers (other than Dow Corning) and foreign manufacturers using Dow-Corning silicone. To be eligible for a payment from the Class 7 Fund, claimants had to show, among other things, that they received a silicone-gel breast implant between January 1, 1976 and January 1, 1992, and that they "marshaled recoveries" from the manufacturers of their implants by trying to collect from those manufacturers before seeking money from the Class 7 Fund. [Distribution Agreement, Annex A, §§ 6.04(b)(ii), (e)(ii), (h)(v), R. 1239-6 at PageID 18909-10.]

Meanwhile, five other manufacturers of silicone-gel implants created their own settlement fund—known as the Bristol, Baxter, 3M, McGhan and Union Carbide Revised Settlement Program. *See In re Silicone Gel Breast Implants Prods. Liab. Litig (MDL 926)*, 174 F. Supp. 2d 1242, 1249 (N.D. Ala. 2001). Dow Corning Class 7 claimants who received an implant from one of those five manufacturers could "marshal recoveries," for the purposes of eligibility under the Class 7 Fund, by filing a claim with the Program. Before filing a claim, however, claimants first had to register with the Program, which gave them a specific "registration status." That status determined whether the claimants could recover from the Program, and if so to what extent.

The Trust began evaluating Class 7 claims in 2006. During that process, the Trust determined that 6,325 claimants (the "disputed-marshaling claimants") had failed to marshal recoveries because they could have but did not pursue claims with the Program. In making those determinations, however, the Trust did not consider the claimant's registration status with the Program, which likely barred some of those claimants from recovery from the Program. Based on this oversight, some of the disputed-marshaling claimants—namely, the ones who alleged that their registration status made them ineligible for recovery under the Program—appealed the

denial of their claims, arguing that they should not have been required to pursue a claim through the Program when doing so would have been futile. Various entities created for the purposes of Dow Corning's bankruptcy—specifically, the Claimants' Advisory Committee, the Debtor's Representatives and Dow Corning itself (together, the "Dow Corning Parties")—thereafter agreed that the Trust should consider a claimant's registration status in determining whether she met the marshaling requirement. The Claimants' Advisory Committee and the Debtor's Representatives later determined that 5,006 of the disputed-marshaling claimants were eligible to receive payment from the Class 7 Fund because they could not have recovered from the Program.

On May 22, 2015, the Dow Corning Parties submitted to the district court a proposed Consent Order that specified, among many other things, the manner in which the marshaling requirement would apply to Class 7 claimants whose registration status made them ineligible for relief under the Program. The district court entered the Consent Order over the objections of the Korean Claimants, who then brought this appeal.

The Korean Claimants first argue as follows: that, in entering the Consent Order, the district court interpreted the term "marshaling recoveries" as used in the Plan; that the district court lacks authority to interpret the Plan; and that the district court therefore exceeded its powers when it entered the Consent Order. We review de novo whether the district court had jurisdiction to enter the Consent Order. *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996). Under the Plan, the district court has jurisdiction to, among other things, "resolve controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents." [Plan §§ 8.7.3, 8.7.5, R. 1239-2 at PageID 18691.] The Consent Order's treatment

of the term "marshaled recoveries" resolves a dispute as to the meaning of that term, and thus plainly falls within the district court's powers under the Plan.

The Korean Claimants next argue that the Consent Order's clarification of "marshaled recoveries" amounts to an impermissible modification of the Distribution Agreement. Under the Distribution Agreement, the Dow Corning Parties can interpret the provisions that lay out the substantive eligibility criteria for obtaining recovery, but they may not modify the criteria themselves. Distribution Agreement, § 5.05[, R. 1239-5 at PageID 18847]. A modification of the Agreement's changes its substantive criteria for relief. *Id.*; *see also In re Johns-Manville Corp.*, 920 F.2d 121, 128 (2d Cir. 1990). Here, the Consent Order did nothing to modify the substantive criteria for eligibility for recovery under the Distribution Agreement. Instead, the Consent Order merely clarified that one of those criteria—the marshaling requirement—is met as to claimants whose registration status made them ineligible for recovery under the Program. The Consent Order thus does not modify the Distribution Agreement.

Some of the Korean Claimants—namely, those who received implants after January 1, 1992—also argue that the Consent Order should have modified the Distribution Agreement to allow recovery for claimants who received implants after (rather than before) that date. But that argument comes years too late. "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991). Here, the bankruptcy court confirmed the Plan and its eligibility criteria in 1999. The Korean Claimants were present at the confirmation hearing and could have made then the argument they make now. *See In re*

*Dow Corning Corp.*, 244 B.R. 634, 658 (Bankr. E.D. Mich. 1999). Their claim on this ground is therefore barred.

Finally, the Dow Corning Parties have moved to dismiss 152 of the Korean Claimants on standing grounds, arguing that they are Class 5 or 6 claimants rather than Class 7, and thus have no stake in this appeal. That defect goes to the merits of their claim rather than to their standing to bring it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). We therefore deny the Dow Corning Parties' motion.

The Consent Order is affirmed.